**In the Matter of John Spencer CARROLL, Appellant.**

**No. 10021.**

United States Court of Appeals
Tenth Circuit.

June 9, 1969.

Rehearing Denied July 23, 1969.

Certiorari Denied Jan. 12, 1970.
See 90 S.Ct. 570.

Walter L. Gerash and Rebecca L. Bradley, Denver, Colo., for appellant.

Warwick M. Downing, II, Denver, Colo. (Lawrence M. Henry, U. S. Atty., and Richard T. Spriggs, Asst. U. S. Atty., with him on the brief), for the United States.

Before MURRAH, Chief Judge, SETH, Circuit Judge, and CHRISTENSEN, District Judge.

PER CURIAM.

The United States District Court of Colorado on its own motion filed an Order to Show Cause why disciplinary action should not be taken against the appellant as a member of the bar of the court. This Order was served on appellant, he filed a Response, a hearing was had before the court en banc at which appellant was represented by counsel, produced witnesses, and introduced exhibits. The transcript contains several hundred pages of testimony.

The judges of the District Court made findings and conclusions, and entered judgment which found the appellant guilty of unprofessional conduct and publicly reprimanded and censured him. This appeal was then taken.

The transcript shows that the appellant was the attorney for a client who was charged with a federal offense and also charged with first degree murder by the state of Colorado. The appellant represented his client only in connection with the state charge. The record shows that the client during all pertinent times was a federal prisoner in custody of the United States Marshal for the District of Colorado. It appears that the appellant felt it desirable to generate some favorable newspaper publicity as to the character and general demeanor and appearance of his client to counteract unfavorable publicity which his client had theretofore received. To this end, the appellant sought to have the client interviewed by a newspaper reporter and to have him photographed for the news story. Such an interview was had in the jail in Denver, photographs were there taken, and the newspaper article was published.

The trial court, sitting en banc, found that a newsman from the Denver paper which was to publish the story called the United States Marshal to inquire whether an interview could be had. He was informed by the marshal that this could be done only with an order from the court. The newsman was later advised by the marshal that the court had denied an informal request, but it was suggested by the marshal that the matter could be presented to the court by petition. The court further found that the substance of this conversation was made known to the appellant.

Thereafter the appellant decided that an attempt would be made to take a reporter into the jail, and if he was barred from an interview, a court "test" could be had. The appellant and the reporter then went to the jail, a visitor's slip was filled out by the appellant. Inquiry was made by the jailer as to the identity of the person who accompanied appellant. The trial court found that the appellant then replied, "he is my associate." The appellant and the newspaper reporter were then permitted to enter the visitors' portion of the jail and the newspaperman interviewed the client. On the day following the newspaper interview, the appellant and a newspaper photographer went to the jail. The appellant asked permission of the jailer to take the photographer into the jail to take a picture of the client. The appellant was informed that no pictures could be taken without permission from the United States Marshal's office. The appellant then called the marshal's office and was informed by a deputy marshal that this could not be done without permission from a United States District Judge or from the Bureau of Prisons. A few days later, the appellant and an investigator went to the jail where the appellant filled out a visitor's slip. The jailer in-

quired of the appellant as to the identity of the individual with him. The court found that the appellant responded that this individual was his "associate." The appellant and the investigator were thereupon admitted to the jail and interviewed the client. The investigator had a camera in his briefcase and photographed the client in the interview room in the presence of the appellant. This photograph was used by the Denver paper which printed the interview referred to above. The trial court found further that during the course of these several visits to the jail, the appellant did not advise the employees that in the first instance the person accompanying him was a reporter who desired and intended to interview the client, nor on the subsequent occasion that the individual accompanying the appellant had a camera and was entering the jail with the intention of photographing the client. The court further found that at no time while the client was in federal custody did the appellant by petition or otherwise seek permission from a United States District Judge or from an official of the Bureau of Prisons to have the interview take place nor to have photographs made in the jail.

The trial court concluded that the appellant had "wilfully and intentionally" aided the reporter in obtaining the interview after having been advised that such interview could not be had without first obtaining the permission of the court, and reached a like conclusion as to the photographer. The court further found that by referring to the reporter and to the photographer as an "associate," the appellant had intentionally and purposely misled the jail officials into believing that the individuals were attorneys and were entitled to visit with the client along with appellant.

The court in its judgment found that the appellant had conducted himself in a manner unbecoming a member of the court, and that he had sought to obtain his desired ends by means of deception and subterfuge whereas there were appropriate legal avenues available of which he was informed and was aware. The court found that his conduct was contrary to the standards of candor, fairness, and morality required of a member of the bar of the court.

Our examination of the record demonstrates that the findings of the trial court are clearly supported by the record, and that there has been no abuse of discretion in the action taken by the trial court.

The basis for the disciplinary proceedings taken against the appellant was made clear in the Order to Show Cause and was not in any substantial way altered or changed thereafter. The charges were clear, the issues were simple, there was given a full and ample opportunity for the appellant to formally respond to the Order to Show Cause, and to thereafter put forth whatever testimony and evidence he saw fit. The appellant was adequately represented at the hearing, and otherwise had full and ample opportunity to present his case. Theard v. United States, 354 U.S. 278, 77 S.Ct. 1274, 1 L.Ed.2d 1342. As indicated above the matter was heard en banc by the three judges of the United States District Court.

■■■ This is an ordinary disciplinary proceeding taken by the court against a lawyer who had been admitted to practice before the court and over whom they had full and ample authority to initiate disciplinary proceedings and to carry them to their conclusion. Hertz v. United States, 18 F.2d 52 (8th Cir.); In Re Patterson, 176 F.2d 966 (9th Cir.); Mattice v. Meyer, 353 F.2d 316 (8th Cir.); Flaksa v. Little River Marine Construction Co., 389 F.2d 885 (5th Cir.); Theard v. United States, 354 U.S. 278, 77 S.Ct. 1274, 1 L.Ed.2d 1342. There is no requirement in the authorities or by the practice that the incident for which the member of the bar is sought to be charged need have occurred in a proceeding then pending before the court as appellant urges. In fact, most disciplinary proceedings relate to matters which are not related to pending proceedings. The appellant on this appeal apparently seeks to

treat the case as one in contempt and urges that the elements of such a proceeding are lacking. It is not, however, such a proceeding and all the formality and notice necessary to protect the interests of the appellant were taken by the trial court which is the only authority which has the power and authority to so discipline the members of its bar. See Cammer v. United States, 350 U.S. 399, 76 S.Ct. 456, 100 L.Ed. 474.

As referred to above, the record shows that the appellant sought to obtain the ends which he thought were desirable by means of subterfuge and through acts which misled the custodial officers when there were proper procedures available to him whereby he could seek permission to do what he did by subterfuge. The record likewise shows that he knew that the client was in the custody of the federal authorities, and that he knew to whom a proper application could be made and how it should be made.

The judgment of the trial court is hereby affirmed.