In the Matter of the Application of THE PEOPLE OF THE STATE OF NEW YORK to Acquire Title to Certain Lands in the Counties of Bronx and New York, etc., Necessary for the Improvement of the Harlem River and Spuyten Duyvil Creek, Pursuant to Chapter 414 of the Laws of 1913, Appellant, against ISAAC G. JOHNSON & COMPANY, Respondent.

First Department, May 15, 1925.

**Taxation — corporation franchise tax — inviolability of returns under Tax Law, § 219-i — court cannot order production of returns on application of State in proceeding to condemn land of corporation.**

In a proceeding to condemn land of a corporation, the courts cannot on the application of the State compel the State Tax Commission to produce the returns of the corporation made to the State Tax Commission for the purpose of assessing franchise taxes, for section 219-i of the Tax Law provides that the returns of a corporation shall be kept secret, with certain exceptions therein stated, which do not include the purpose for which the returns were sought in this proceeding.

APPEAL by the plaintiff, The People of the State of New York, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 31st day of March, 1925, denying plaintiff's motion for the issuance of a *subpœna duces tecum* directed to the State Tax Commission.

*Albert Ottinger, Attorney-General* [*A. S. Gilbert* of counsel], for the appellant.

*John Jay McKelvey* [*Martin Conboy* of counsel; *Harry B. Chambers* and *Edwin N. Moore* with him on the brief], for the respondent.

DOWLING, J.:

This proceeding is brought under the general Condemnation Law for the acquisition by the State of defendant's property, which is to be taken for the straightening of the Harlem River Ship Canal in accordance with the River and Harbor Appropriations Act of Congress, adopted March 4, 1913 (37 U. S. Stat. at Large, 801, 804, chap. 144), and pursuant to chapter 414 of the Laws of 1913 (adding to Laws of 1876, chap. 147, § 13 *et seq.*), as amended.

On April 30, 1923, title to the defendant's property was vested in the State of New York. Commissioners appointed in the condemnation proceedings have been for two years past engaged in hearing the evidence as to the value of the property and such hearings are still being held. Defendant has offered evidence before said commissioners as to the value of the property, including

land, plant, equipment, supply values, overhead, good will values, and value as a going concern, together with the value of prospective plant extension and numerous other items.

By its motion the State sought to obtain for use in evidence in the condemnation proceeding franchise tax returns filed by the defendant for the years 1920, 1921 and 1922. The Special Deputy Attorney-General makes affidavit:

" That deponent desires to introduce in evidence for the purpose of the record, the reports filed by the defendant under Article 9-A of the Tax Law relating to the taxation of corporate franchise for the years 1920, 1921 and 1922. These reports were duly filed, as deponent verily believes, with the State Tax Commission, and it is the purpose of the plaintiff to introduce the same in evidence as admissions against interest.

" The deponent verily believes that the said tax returns will show sworn statements by the defendant, setting forth the value of its real and personal property for these years. It is the intention of the plaintiff to introduce the same in evidence for the purpose of aiding the said Commissioners in their determination of what is a fair compensation for the property taken by the State of New York in this proceeding."

Section 219-i of the Tax Law (added by Laws of 1917, chap. 726, as amd. by Laws of 1921, chap. 443) contains the following provisions:

" § 219-i. Secrecy required of officials; penalty for violation.

" 1. Except in accordance with proper judicial order or as otherwise provided by law, it shall be unlawful for any Tax Commissioner, agent, clerk or other officer or employee to divulge or make known in any manner the amount of income or any particulars set forth or disclosed in any report under this article. Nothing herein shall be construed to prohibit the publication of statistics so classified as to prevent the identification of particular reports and the items thereof, or the publication of delinquent lists showing the names of taxpayers who have failed to pay their taxes at the time and in the manner provided by section two hundred and nineteen-c together with any relevant information which in the opinion of the Tax Commission may assist in the collection of such delinquent taxes; or the inspection by the Attorney-General or other legal representatives of the State of the report of any corporation which shall bring action to set aside or review the tax based thereon, or against whom an action or proceeding has been instituted in accordance with the provisions of sections two hundred and sixteen or two hundred and nineteen-f of this article.

" Reports shall be preserved for three years, and thereafter until the State Tax Commission orders them to be destroyed.

" 2. Any offense against the foregoing provision shall be punished by a fine not exceeding one thousand dollars or by imprisonment not exceeding one year, or both, at the discretion of the court and if the offender be an officer or employee of the State he shall be dismissed from office and be incapable of holding any public office in this State for a period of five years thereafter."

Under this act, " except in accordance with proper judicial order or as otherwise provided by law," the cases in which the reports of taxpayers may be inspected are limited to cases in which the information obtained therefrom is to be used: (a) In compiling " statistics so classified as to prevent the identification of particular reports and the items thereof." (b) In proceedings in which the use thereof " in the opinion of the Tax Commission may assist in the collection of such delinquent taxes." (c) In an action by the taxpayer which filed the report to " set aside or review the tax based thereon." (d) In a proceeding under sections 216 or 219-f of the Tax Law (added by Laws of 1917, chap. 726, as amd. by Laws of 1921, chap. 443, and Laws of 1922, chap. 507) against the corporation which filed the report, *i. e.*, in a proceeding by the State to collect the tax and penalty, to compel the filing of a return by, or to forfeit the charter of the corporation.

All of the specific exceptions (within none of which does this case fall) are cases having to do with the collection of taxes or with the compilation for the benefit of the Legislature of general (not identifiable) statistical information relative to the wealth of the State and to the workings of the law.

Unless authority be found elsewhere in the statutes for the disclosing of the information contained in the returns, it is clear that their inviolability so far as concerns use of them by the Attorney-General in this condemnation proceeding is in no wise affected by the exceptions above referred to. In all other cases, " except in accordance with proper judicial order or as otherwise provided by law," the act gives the taxpayer, which is required to bare its secrets to the State, a pledge of inviolable secrecy. It is not, and could not be, contended that the present motion should be granted because the Legislature has " otherwise provided by law," for there is no such provision.

The question then resolves itself into the meaning of the words " proper judicial order," which is the first general class of exemptions from the strict policy of secrecy enjoined by the statute. I am of the opinion that the order therein referred to is one made by the court which becomes necessary in the actions or proceedings set forth in items b, c and d of the statute, where the publicity of the report is an inevitable incident to, and consequence of, the

judicial proceeding, which would be valueless and ineffective without the publicity of the report, which must attend the determination of the issue and be an essential factor therein.

It would also justify an order for publicity in proceedings affecting the truthfulness, validity and legality of the report itself, as for exemple, in a criminal prosecution for forgery or perjury arising out of a false report.

But in my opinion no " proper judicial order " can be made except in an event when the integrity of the report itself is attacked or defended as the main, and not as a merely collateral, issue.

To permit the use of such reports in an ordinary casè is to destroy the secrecy attaching to them and to break down the protection which the statute gives to taxpayers in the disclosure of their most intimate business affairs to the taxing power.

*Brackett* v. *Commonwealth* (223 Mass. 119) was a condemnation case in which the question was the assessment of damages due to petitioner as owner of lands which the Commonwealth had taken for bridge purposes. The Supreme Judicial Court of Massachusetts, speaking through Chief Justice RUGG, said (at p. 126): " The Attorney-General offered the original tax returns of the petitioning corporation filed with the tax commissioner of the Commonwealth and taken from his custody for the purpose of evidence before the commission. These returns are required by law to be in detail. It may be presumed that they contained statements as to value material to the issues on trial. It is matter of common knowledge that formerly such returns often have been used in evidence, when values therein stated became material in actions, by the persons making them. But in St. 1903, by § 48 of c. 437, it was enacted for the first time that such return ' shall be open only to the inspection of the tax commissioner, his clerks and assistants, and such other officers of the Commonwealth as may have occasion to inspect it for the purpose of assessing or of collecting taxes.' This provision has been continued in St. 1909, c. 490, Part III, § 40, and St. 1914, c. 198, § 6. It indicates a legislative determination not only that it shall not be open to general observation, but that it shall not be used for any purpose other than that stated in the statute. Thus its evidential character is also affected. The statute manifests a purpose that such returns shall not be used as evidence in the ordinary case. *Bowman* v. *Montcalm Circuit Judge*, 129 Mich. 608, 610. The reason for treating tax returns as not open to use by usual methods has been recognized. *Boske* v. *Comingore*, 177 U. S. 459, 469. *In re Joseph Hargreaves, Ltd.* [1900] 1 Ch. D. 347. It is not here intimated that in a criminal proceeding involving the integrity of the return, it

might not be produced in court. Therefore, there is nothing inconsistent with this conclusion in *Commonwealth* v. *Ryan,* 157 Mass. 403."

So in the case of *Bowman* v. *Montcalm Circuit Judge* (129 Mich. 608), the Supreme Court of Michigan said (at p. 610): " The statute (1 Comp. Laws, § 3846)* shows upon its face a design that these statements shall be used only in furtherance of the objects for which they are required, and that they are not to be considered a public record, in the ordinary sense of the term. Provision is made for their custody and the inviolability of their contents during the limited time that they are expected to be preserved."

I am of the opinion that the present is not one of the cases for the granting of a " proper judicial order " for the production of the franchise tax returns of the defendant, and that the order appealed from should, therefore, be affirmed, with ten dollars costs and disbursements.

CLARKE, P. J., McAVOY, MARTIN and BURR, JJ., concur.

Order affirmed, with ten dollars costs and disbursements.